May it please the Court, good morning. This case involves an anti-dumping duty order, issued nearly a decade ago, that was premised entirely on a foreign government subsidized financial statement, which unlawfully distorted normal value. This Court has heard this case once before. In that earlier decision, your case comes to the forefront. It comes down to a couple of things, and can you summarize for me what you think the key flaws are in what Commerce did below? I don't really need you to say what we did in the last decision. What I mean by it is one of them has to do with subsidies, right? Correct. Why don't you start with that if you don't mind? Sure. The error that you perceive in Commerce's failure to take into account that the two things that it did rely on both potentially had subsidy problems as well, and they didn't explain why that it's okay to rely on them when they excluded other data because of subsidy problems. Is that a fair assessment? Well, Your Honor, generally speaking, the record contains 11 financial statements. The Commerce Department originally threw out 10 of them and relied on one, a company that is subsidized, to an unknown degree. In the Court's… Which one was that? Tell me which one. Hitech was the name of that company. When this case came before the Court the first time, Your Honor's decided in your decision that Commerce's reliance on that Hitech statement, which was indisputably subsidized, was contrary to the agency's duty of accuracy and fairness. More specifically, the error that this Court remanded the case on was Commerce's failure to comparatively analyze, to gauge the effect of that subsidy on the Hitech statement, and then to comparatively analyze that deficiency against the comparative deficiencies of the other 10 statements on the record. But that's last time. And this time, is that the same error? Is your error that Commerce absolutely failed to do the requisite subsidy analysis here? They just didn't do it. It's almost like a Chenery problem, right? We can't review what they didn't do. Is that what it is? Yes, Your Honor. They failed to do so. They explicitly refused to analyze the nature and degree of the subsidies of the two… The problem you have is the degree is infinitesimal. I mean, at least the record evidence would suggest it's really small and is unlikely to have any significant, it seems to me, impact on the ultimate question they're deciding. But if your issue is a failure to do the analysis, I think you might be right, but I don't know. I don't love vacating and remanding for busy work when the outcome is not going to be favorable for your client. It just causes you more work, costs them more money. So tell me what… I mean, if you tell me, well, it doesn't matter if it's infinitesimal. It doesn't matter if it comes out the same way. They have to do the analysis. I think you might be right. But go ahead. Tell me what your thoughts are. Your Honor, the agency failed to analyze that subsidy. And while there's a figure on the record about a subsidy reflected in that financial statement of Sundram, the other company… Is that confidential, by the way, or is it not confidential? I'm sorry, Your Honor. Is that confidential or not? It's not. Okay. So it is like less than two one-hundredths of a percent of the revenues, right? Your Honor… How does that by itself pass the harmless error? Well, Your Honor, the Commerce Department did not engage in that analysis. They never referred to that. Commerce did not mention, did not say, this is so small, we're not going to worry about it. And even aside from that, it didn't redo the comparative analysis, not to HITECH, but between Sundram and to pick out one, Al Jazeera. Well, as we pointed out… And I'm just going to consistently put LSI aside. I realize you love LSI, but I want to put that aside. Thank you, Your Honor. The situation we face today is far worse than what we faced with HITECH. Because Sundram, the company that they've now selected, is one that they've repeatedly determined has no comparable products to Oman Fastener's steel nails or even screws. Your Honor, does Commerce say anything about why the difference between Sundram and Oman product is of a different character than the difference between Al Jazeera and Oman products? Yes, Your Honor. The record shows that Commerce acknowledged that Sundram is an auto parts manufacturer, and there's plenty of evidence in the record to support its conclusion that the auto parts made by Sundram are not comparable to any products that Oman Fastener's produces. Hold on, I think, I'm not certain, maybe Ted Strong is better than I am about whether that answers his question. I think his question…   Not quite. Yeah, that's what I thought. So, I guess the question was more along the lines of, did they do an analysis to show why Sundram and Oman comparison is okay, but Al Gazar, I don't know if I'm saying it right. Am I saying that right? How do you say it? It's Al Jazeera. It's the television people. Al Jazeera is one such company. I'm sorry, Your Honor. Yes, Al Jazeera is one of the six home market statements on the record. Not the only one, but one of the six home market statements. They make steel pipes or something? Correct. I guess the question I thought that Judge Toronto was asking, which is one that I'm also curious about, is did Commerce do the legwork of showing why Sundram was okay, but Al Gazar was not, given that none of them are exactly the same product. Do you follow what I'm saying? Yes, Your Honor, and the answer is no, they did not. In the original investigation, they threw out Sundram on the precise basis that they threw out all of the home market statements. In fact, you can find they lumped in Sundram and said, just as with the home market financial statements, it produces no comparable merchandise as steel nails. There may be an answer to why one that isn't the same product, but not the other, but Commerce hasn't given it yet, and we are not, as an appellate court, in a position to render fact findings about comparability in the first instance. That's correct, Your Honor. I'm just making sure I'm summarizing accurately what you're arguing to us. You're not asking us to go that extra step and decide they should have looked at something, because how do I know whether steel bars, you know, like these different, I'm not in a position to make that kind of nuanced fact finding, and you appreciate that, right? Yes, we agree, Your Honor. This court should not be in that position. It's the agency's duty in the first instance, and that was reflected in this court's remand. It instructed the agency to engage in that very kind of comparative analysis of the selected subsidized statement against all the other statements on the record, home market, the other third country statements, and the selected subsidized statements. We do not have that on this remand. Okay, so I think I understand these two arguments, both your subsidy argument and your comparability argument. Was there anything else that you needed to address? Well, Your Honor, we did raise also the issue of the potential for reopening the record. The Commerce Department refused to do so during this first remand. Is this what you're talking about because of the partially translated documents? Your Honor, we think there are many reasons why the record should have been reopened. I didn't ask that. I'm just asking you to help me put in context how I understand your briefs. One of the issues that you argued was that there were partially translated documents, and Commerce should have reopened the record to let you submit them, what, fully translated? Is that right? Your Honor, our overarching argument is that Commerce, as this Court stated, should have chosen to reopen the record if it concluded that it did not have enough information to engage in the kind of comparative analysis that you ordered it to do. Well, it seems to think it did have enough information because it went ahead and came to a conclusion, but it seems to have jumped over the step of actually explaining it. Well, Your Honor, if they had engaged in the kind of analysis that this Court instructed them to do, they would have looked into the subsidy of the Sunderm Statement. They had no information on the record as the subsidy of the HITECH Statement, and they would have then done a comparative analysis of those deficiencies as well as the comparability question. Let me ask you this. I generally have a very deferential approach to Commerce's decision when somebody has failed to meet their burden of submitting a fully translated document, and then they want to come along later and eradicate or fix that problem. I'm very sympathetic, and I have to review a decision by Commerce in those circumstances under an extremely deferential standard. So would it be absolutely necessary for them? Would they be required to? Why, on remand, if I remand this case because I have a problem with Commerce not articulating about subsidies and comparability and all that, why do I have to find in your favor on that last question? I don't see why. Your Honor, we're not relitigating that issue. We argued that issue in our original appeal. The Court addressed the question of what the regulations of Commerce required of parties with regard to the submission of fully translated financial statements. That's not what we're here to argue today. In fact, in the Court's decision the first time around when it was dealing with that issue as well as the Home Market Statements, it made clear that it was addressing those issues aside from the question of subsidies. Subsidies was addressed as an independent and very serious concern by the Court, and we agree with that. So when this case goes back to Commerce, as it should, to conduct the kind of analysis that it should, this is not just about the LSI statement. It's about all of the statements in the record. We continue to submit that on a comparative basis, some of the Home Market Statements in a full analysis, which the agency hasn't done, we submit that it should find that some of the Home Market Statements have fewer deficiencies or are less distorted. We can't make any of those decisions. We vacate and remand. The only question is for us to identify errors that clearly we have to tell Commerce to fix. You've put really well done, put forth two clear ones, which is great, but the third one that has to do with what Commerce should or shouldn't be willing to consider, especially if it was either filed late, if it was untimely, if it was not fully translated. You don't have me on that one. We're not here to relitigate the question of our efforts to submit the fully translated LSI statement in the original investigation. That's a settled issue from the original decision by this Court. What we are here to argue is that the agency did not engage on this record, given the distortive effect of subsidies on the two financial statements, did not engage in the kind of comparative analysis that you instructed it to do. It made matters worse, we would submit, because it abandoned the high-tech statement, which has an unknown amount of subsidies, and selected a statement in which, by the way, produces products that are much more similar to Oman Fastener's steel nails, and selected an auto parts company that had already helped twice in proceedings in this case, produced no comparable merchandise to Oman Fastener's. And how can the agency reach that conclusion on this record without fulfilling its duty of accuracy, as you've ordered it to do, to compare those deficiencies to the home market statements that are on the record? You want to save the time for rebuttal? You're winding down on your rebuttal.  Okay, let's do that. Let's hear from the government. Thank you, Your Honor. Is the government up first? Who's up first? Yes, Your Honor.  Nikki Cote for the United States. May it please the Court, I'm just going to jump straight to subsidies. And prior to doing so, however, I would like the Court to sustain Commerce's remand determination here. With respect to the subsidies, it is not a fair statement to say that Commerce did not look into the subsidies. Two of the 11 statements that were on the record, those of Hitech and those of Sundram's, both contained evidence of subsidies. These are third-party companies. These are not the reviewed company. They are not an interested party in this investigation. And I say that because it's important. These records were put on the record and before Commerce by the interested parties, Oman and Mid-Continent, not by Commerce. Commerce is bound to look at the record and make a determination on the record that the parties put before it. It does not do a verification of the information that are in the financial statements that are put on the record by the interested parties. All that it can do is make a determination based on the information that is contained in those records. So what did Commerce do upon remand here? Commerce engaged seriously with looking at the records of Hitech and Sundram that contained evidence of subsidies. Both of them contained evidence of potential subsidies. Now, if you're just analyzing those two companies, it's a wash because there's really not more information in the financial statements themselves for Commerce to go beyond that. Now, your honors asked questions regarding comparative analysis. Well, Commerce did that too on remand here. The trial court insisted that Commerce consider. Can you show me where Commerce addressed the subsidies issue? Appendix. Oh, I'm sorry, the subsidies issue? Yes, your honor. I think 830 to 831 is the closest I see. And there Commerce says both Hitech and Sundram have subsidies. And that's pretty much all it says. And that point is not, I think, really, that's not in dispute. Mr. House's argument is that at least once there's an acknowledgment of subsidies in Sundram, Commerce is obliged to say why it would pick Sundram over the remaining rejected, what, 9 or 10. Yes, your honor. And that didn't do that. Actually, it did do that. And it did do that on appendix page 40. And there, your honor, Commerce stated that it found that Sundram's statements, and I'm summarizing here. Hold on, don't summarize. Tell me where they did it. Yes, your honor. Is it at the very top? That's where it discusses that they acknowledge both Hitech and Sundram received subsidies, your honor. And then at the paragraph beginning, furthermore, which is the fifth line from the top, it discusses in the second or the next sentence, therefore, based on record evidence, we find that Sundram's financial statements are the best option on the record for calculating CV profit and independent selling expenses because they were I thought, actually, you were going to read the second sentence, which feels like it gets closer to what you need. While Hitech and Sundram's profit may be distorted by subsidies, their respective profits are still based on production and sale of comparable merchandise, unlike the other financial statements on the record. This is true. I apologize, your honor. I was actually responding to the question about comparing those records, subsidized records, with the other financial statements on the record as well. Doesn't that sentence make that comparison? Yes, it does. Put it mildly in rather short form. Yes, your honor. Right. So I just want to push ahead to what I think is really in dispute. One way of putting the argument is that that sentence is kind of all there is, the one that we were just talking about. And it's not enough because, at least previously, the commerce had said Sundram's products were really not terribly comparable. You know, different purchasers, automotive manufacturers were buying them. They were kind of high-end fasteners, not, you know, penny steel nails or something. And an explanation is needed for why that previous determination about non-comparability is now being reversed, in effect. And it's not just a stand-alone reversal. It's a comparison to, I'm just going to keep using Al Jazeera, which seems to be the feature, the non-comparability determination about Al Jazeera. Why is that non-comparability, you know, worse than the one it had previously found for Sundram? That's my understanding of the argument. Absolutely, your honor. And your question anticipated exactly where I was going here. Commerce prefers to calculate a constructed value profit based on comparable merchandise. This is a fact. Al Jazeera does not make comparable merchandise. It's not steel nails. It's not the general category of goods that steel nails falls within, which is fasteners, right? But the only problem is, I think that this goes to Judge Toronto's earlier question to your opponent, which was related to, if you previously found Sundram's products are not reasonably comparable, then how is it an answer to say Al Jazeera's products are not reasonably comparable? The answer is that steel bars and tubes and hollows fall within a completely disparate category of goods than steel nails. I understand your argument today, and I appreciate that, that what you're arguing to me today is, well, even though both of them are not comparable, one is much worse in terms of comparability than the other, like degrees of not comparable. Where did Commerce do that detailed assessment? Because I think that's what Mr. House is complaining about, is that there isn't that analysis in this opinion for us to look at. On page 28 of the appendix, at the bottom, where it says in the instant case, there are 11 financial statements on the record. Commerce goes on to discuss the six Omani companies that do not produce steel nails or any type of merchandise comparable enough to steel nails to satisfy the statutory preferences. And the Federal Circuit, this Court, has upheld our decision to rely instead on the third country data on the record, which better reflect the profit experience of the mandatory respondent. Now, with that said, Your Honor, previously Commerce made a determination that nine financial statements on the record were either of goods that are completely dissimilar. And what that means is that they're not sold in the same trade. They do not involve similar types of operations for manufacturing the goods. They do not have the same customer base. I don't see any of that in this opinion. Where is that in this opinion? Those are great arguments. And if Commerce had said all of that, we wouldn't be here today. Actually, Commerce says it's in the record, but not in this determination, Your Honor. And did they say it with regard to the direct comparison between, say, Al Jazeera and what's the other one? On page 40, I believe, it didn't directly refer to Al Jazeera, but it referred to the profit from production and sale of comparable merchandise, unlike the six Omani financial statements. They contain the necessary information to confirm the company's data is reliable, unlike the three partially translated financial statements. And they are contemporaneous with the record, unlike HITECH. I want to clarify an answer to a question. I do not know that I answered it, quite frankly. Previously, Commerce had declined to use the records of nine financial statements on the record, six of which were from Oman, three of which were partially translated financial statements, Your Honor. It had reduced the comparative analysis to two companies, those two companies being HITECH and Sundrams. Therefore, the analysis that was before this court in Mid-Continent III really pertained to just those two companies, and Commerce had not engaged in any substantive analysis of subsidies. There was no reason for it to then discuss also the other companies that the court had, quite frankly, affirmed its decision on. I think you're actually kind of getting at the heart of the process question here. So you want to essentially say certain issues the book was closed on and Commerce didn't need to reconsider, even though, and I think the other side wants to say, whether the book was closed on them depends on whether or not the other side wants to reconsider. I'm not quite sure what to make of the idea that when the only thing that, in the end, matters is whether the global assessment has reasonably resulted in the decision to close the book. of X here, Sundram, and that requires a comparison between all the other choices, and just because all the other nine had been excluded when no subsidy problem was seen with HITECH and Sundram doesn't mean that they were properly excluded once you see that there's a subsidy problem. I understand, Your Honor, and the answer to this question is that Commerce actually did review all of the 11 statements again. Commerce actually made a similar determination to the determination that it previously made with respect to nine of them. There is a reason why the nine other financial statements were not usable for Commerce's purposes. The reason is that Commerce, for approximately 20 years, has been using a standard that basically looks at the merchandise itself in the first instance. So, when you're doing an analysis of financial statements... So, when you go back to the earlier Commerce analysis, and I guess I'm thinking particularly at Website Appendix, page 3265 and following, it's the May 13, 2015, I don't know what these things are called, Memorandum, Issues and Decision Memorandum, right? There's some discussion, at least at 3279, of the equipment used for, I guess, these other six Omani companies making a different product. Is there anything in there or elsewhere where Commerce says, it's true that for Sundram, the fasteners are not exactly steel nails, but they are in kind of the next level up category of fasteners, and the ones from the six Omani companies are not, and that makes a big difference? I thought they said that in this remand determination, Your Honor. In which remand determination? The one that is before the court right now, Your Honor? Well, I would love to see that, because I think that's the heart of what Mr. House says is the problem, that they didn't make it. On page 26, appendix page 26, Commerce explained that high-tech financial statements were superior to those of the Omani producers on the record, because none of the six Omani companies on the record produced merchandise comparable to steel nails or in the same general category as steel nails. That's the top of page 27, right? Yes. That's where it continues to, Your Honor. So a version of that argument is, well, there at least is a reason why the kind of, the non-identity of Al Jazeera and Oman fasteners is worse than the non-identity of Sundram versus Oman fasteners. I'm sorry, Your Honor. Yeah, I'm sorry. Never mind. I think, I'll try and reclassify what he just said, because I think it's important, and I think it's actually a friendly question for you. Yeah, it is. Which is, here you show why it was okay to reject from a technical standpoint certain of the kinds of imports, because they were more dissimilar than the ones that you considered. Correct, Your Honor. And there, the balance of that sentence actually states that comparable merchandise comprised a greater portion of high-tech sales revenue than Sundram's. Sundram actually does make. That's not helpful. Well, but it does actually make screws, whereas the six Omani companies, they don't make screws. Commerce made a determination that. I'm sorry, but Sundram doesn't either. Sundram makes screws. It does make screws. Yes, it does. Okay. Sundram makes auto parts and screws. And Commerce, when it made its determination here, it accounted for the fact that Sundram made other products that were dissimilar. So it focused its attention on the products that are comparable and at least fall within the same class or kind. This is shifting gears a little bit. Why did Commerce not say that the amount of the subsidy on the record for Sundram was infinitesimally small? It could not possibly have affected the profit. The short answer is I don't know. However, based upon what I do know, they don't go beyond what's actually stated in the financial statements themselves. All they could do is state what the figure was, and that is what they did. Well, I thought the financial statement itself reveals here's the subsidy. It's like $3 or something. I'm making that up. And the revenue is $50,000 or something. It can't possibly change anything. Commerce had previously, I believe in another case, found that countervailable. And I believe they state that in a footnote somewhere in the remand determination, Your Honor. And accepting that they had previously done that, they left it at that. I believe my time is up. Yes, it definitely is. Thank you, Your Honors. I apologize for exceeding my time. Mr. Gordon, we just heard from the government for 18 and a half minutes. So please, if you have something that is completely different that you feel is important, please proceed. But we're not going to entertain a brief repeat. No, and I have no interest in that either. I would just offer one or two very brief points. One factor that I think should be brought out when the comparison between high-tech and Sundrum is made is to keep in mind the difference in time periods covered by those financial statements. The Sundrum statement covers precisely the same period of time and reflects accordingly same economic conditions of the period of investigation, whereas the high-tech financial statement. What about the Al Jazeera statement? I don't recall their contemporaneity. I don't think commerce got to that point because of such fundamental difference in the products produced. And just to make a point that's on the record, keep in mind those six companies that were rejected, they weren't just producing steel bars and rounds, corrugated box containers. There was a company that provides large-scale construction services like a Bechtel. So they're very, very radically different, and their financial statements don't have any sort of comparison to the kinds of processes and markets and customer base that are reflected in a producer of fasteners. And to the point about Sundrum's production, it does produce auto parts, but it also is a significant producer of high-tensile fasteners, and they're produced with the same methods, materials, sold for same uses, fastening surfaces together. I happen to know the percentage of Sundrum's sales that are directed to auto fasteners, and I'd like to ask you, but is that confidential information before I ask that question? No. Okay, so my understanding is 36% of their sales are directed to fasteners, and that's what you're saying is more comparable, right? Yeah, that's a significant percentage. And that's why I'm wondering how that compares to the other companies and their – because it's clear Sundrum is in multiple markets, some of which you're arguing is more comparable, some of which is less comparable. How does that 36% number of their sales compare to other record companies here, and does it make it better that commerce used them for some reason or worse? I'd say it makes it better, because if you look at the six that were rejected in that sort of iterative process, they produce zero, none. They don't produce fasteners at all, and so commerce naturally removed them from consideration, consistent with the approach the court had previously affirmed. I'm not saying they considered the book closed. They went back and reviewed all of them anew, but they used the same approach the court had previously found to be acceptable. So getting to Sundrum with 34%, 36% of fasteners, that's a material – that's a substantial part of their business, and they are then a producer of comparable merchandise, even though they make other dissimilar products as well. That's it for me. Thank you. Thank you. We heard the government concede that it did not examine subsidies. It merely acknowledged them. We also heard it concede that it engaged in a comparison of high-tech to Sundrum only. We believe that was contrary to this court's instructions. Furthermore, on this question of comparability, the Commerce Department has still failed to explain its complete about face on its finding with regard to Sundrum's products. In the fair value investigation, the original investigation, the agency determined that Sundrum's products were not comparable. You'll find that at 3279 of the appendix. And they rejected Sundrum along with and for the same reason as all of the home market statements. And again, in the first remand in this proceeding, which you'll find at 3405, the Commerce Department stated again that Sundrum's – that not only is the majority of Sundrum's products not related to fasteners, auto parts, which they conclude are not comparable to either screws or steel nails. Okay, but I guess the question is twofold. One, the government pointed us to the portion of the opinion where they said, okay, look, they might not be comparable, but they're a lot closer than the other things. You know, that sentence, I don't remember what page it was in the board's decision, that they're much closer. That, you know, there's not comparable, and then there's really not comparable. And that the Sundrum products are at least closer. Well, Your Honor, we submit that the record does not show the kind of comparison between Sundrum and the Omani home market steel producer statements that would allow the agency to reach that conclusion. And in addition, the agency did not engage in the comparative analysis of the admittedly subsidized statement Sundrum against these other so-called non-comparable statements. The analysis simply isn't there for this court to infer. Well, and another problem I have with what you just said before was you said the majority is not related to fasteners, and I think that Mr. Gordon's point was that, well, 36% of the Sundrum sales are fastener-related compared to 0% of the excluded six statements. So, I mean, well, I don't think you would disagree. It's not the majority. 36% is not 51%. So I think that's an unremarkable statement. Why, though, isn't 36% make it more relevant than ones that have 0%? Your Honor, we come back to the statutory language, which under this third alternative for constructed value of profit puts a priority on home market representativeness. You'll find this throughout the cases, throughout Commerce's decision. I don't understand how that answers my question. That is to say when Commerce must depart from a source of profit that is the very company under investigation, which it had to do in this case, when it selects a source of profit under the option three, which is the any reasonable method subsection of the statute that applies here, you'll find language there that says that, however, when it makes that selection, it must take account of the home market. That is the purpose of selecting a profit rate is to reflect the home market experience of a producer. These are third country statements we're talking about, both Sundram and Hitech. So the agency not only failed to explain the effect of the subsidy and the comparative deficiency of the subsidy to these home market statements, they also failed to weigh the comparative value of having home market profit experience in Oman by these steel producers compared to third country profit experience of these subsidized statements. Finally, I would note that the government made the point that the parties made this record. The record is lacking what the Commerce Department needs to analyze subsidies. It admitted so and chose not to do so. The petitioner is the one who populated this record with those two subsidized statements. If anything, it's the other side that failed to provide the Commerce Department with the record of sufficient to engage in this analysis. Okay, that seems like a good place to conclude. I thank all counsel. This case is taken under submission.